**SO ORDERED.**

**SIGNED this 26 day of September, 2017.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

___

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

KAROLYN MARIE HECTOR,              CASE NO.: 16-05602-5-SWH

    DEBTOR                                            CHAPTER 7

## ORDER DISMISSING CASE

The matter before the court is the Motion to Dismiss Case for Abuse (the "Motion") filed by the Bankruptcy Administrator on January 4, 2017, Dkt. 12. A response was filed by the Debtor on January 31, 2017, Dkt. 16. A hearing was held on April 27, 2017 in Raleigh, North Carolina, at which the court took the matter under advisement. After consideration of the pleadings, arguments of counsel, and evidence presented at the hearing, the court will dismiss the case pursuant to 11 U.S.C. § 707(b)(1).

### BACKGROUND

Karolyn Marie Hector (the "Debtor" or "Ms. Hector") filed a voluntary petition for relief on October 27, 2016. Ms. Hector's schedules and claims filed indicate assets valued at $18,376.89, secured debts in the amount of $28,592.00, unsecured priority debts in the amount of $33,482.00,

and unsecured nonpriority claims in the amount of $89,361.56. On Schedule I, Ms. Hector listed that she earned $3,191.06 in net income per month as a realtor and lists monthly expenses totaling $2,456.00 on Schedule J. On Official Form 122A-2, Ms. Hector listed a household size of one and claimed deductions for the following expense categories: (1) food, clothing, and other items; (2) out-of-pocket health care allowance; (3) housing and utilities – insurance and operating expenses; (4) housing and utilities – mortgage or rent expenses; (5) vehicle operation expense; (6) vehicle ownership or lease expense; (7) taxes; (8) life insurance; and (9) health insurance. In total, Ms. Hector claimed IRS expense deductions in the aggregate amount of $3,908.41 and additional expense deductions in the amount of $257.62 for health and disability insurance.

Ms. Hector began employment as a real estate broker with a local home builder in November of 2016, immediately after the filing of the petition. S he is paid on a commission basis and earns 1.5% of the sale price of each new home sold. In the three months preceding the hearing, Ms. Hector sold ten houses and earned a total of $13,259.07 while employed with another builder. She anticipated earning approximately $40,800 during the period of May 2017 to October 2017 (BA's Exhibit 1) but acknowledged that her income is entirely dependent on sales and therefore subject to market fluctuation.

Prior to her present employment, Ms. Hector worked as a real estate agent in Virginia. She incurred significant tax liability in 2009, 2014, and 2015. In 2009 and 2014, she withdrew funds from an individual retirement account, but due to her age, she was assessed an early withdrawal penalty. In 2015, she earned approximately $110,121 as an independent contractor but failed to withhold and remit quarterly taxes and was therefore assessed a liability by the Internal Revenue Service.

At the hearing, Ms. Hector testified that she is unmarried but presently resides with a domestic partner in a home solely owned by the partner. Ms. Hector's partner pays all expenses associated with the residence, including the mortgage, all utilities, property insurance, and property taxes. While Ms. Hector does not pay her partner monthly rent, she purchases all groceries and cleaning supplies for the home and performs housekeeping tasks and yard maintenance. Ms. Hector and her partner began this living arrangement in February of 2016 when she relocated to the Raleigh area from Virginia.

Ms. Hector and her partner do not commingle funds, share any expenses, or jointly own any assets. Ms. Hector maintains an entirely separate checking account and devotes her income to a car lease payment, car insurance, groceries, cleaning supplies, cell phone service, and business and marketing expenses incurred as an independent contractor. She is solely responsible for individually incurred expenses or debts and does not discuss financial information with her partner.

The Bankruptcy Administrator filed a Statement of Presumed Abuse on December 5, 2016, Dkt. 9, followed by the Motion on January 4, 2017, Dkt. 12.[1] In the Motion, the Bankruptcy Administrator asserts that the case should be dismissed for abuse pursuant to 11 U.S.C. §§ 707(b)(1) or (b)(3) because Ms. Hector improperly claimed deductions for housing and utility expenses on her "Means Test - Official Form 122A-1." The Bankruptcy Administrator primarily contends that if the inapplicable deductions are disallowed, Ms. Hector will have sufficient disposable income to commit to a chapter 13 plan for the benefit of her unsecured creditors. In her Response, Ms. Hector states that her contributions to the household constitute in-kind rent and she is therefore entitled to

---

[1] Based upon her current monthly income of $4,499.04, Ms. Hector qualified as an above-median debtor in the state of North Carolina pursuant to § 707(b)(7)(A)(i). As a result, the Bankruptcy Administrator's Motion is properly before the court pursuant to § 707(b)(7).

3

the deductions for housing and utilities claimed on her Official Form 122A-1. At the hearing, the Bankruptcy Administrator further argued that Ms. Hector's failure to properly list her household size of two and failure to include any portion of her partner's income in her current monthly income calculation in order to pass the means test also constitutes abuse.

The issues before the court are, therefore: (1) whether Ms. Hector may list a household size of one for means test purposes, when she shares a residence with a partner; (2) whether a portion of her partner's income must be included in her current monthly income calculation; and (3) whether Ms. Hector may properly claim the "housing – mortgage or rent expense" and "housing – insurance and operating expenses" deductions, given that her partner presently pays for all expenses related to the residence. The Bankruptcy Administrator bears the burden of proof as the moving party. *In re Leggett*, No. 10-03383-RDD, 2011 WL 802806, *3 (Bankr. E.D.N.C. Mar. 2, 2011) (citations omitted)

## DISCUSSION

Section 707(b)(1) of the Bankruptcy Code provides that a court "may dismiss a [chapter 7] case filed by an individual debtor . . . or, with the debtor's consent, convert such a case . . . if it finds that the granting of relief would be an abuse of the provisions of [chapter 7]." 11 U.S.C. § 707(b)(1). A presumption of abuse arises if a debtor's "means test" calculation, as detailed in the formula contained in Section 707(b)(2), demonstrates sufficient disposable income to repay debts. *Id.* at § 707(b)(2). If the presumption of abuse does not arise under 707(b)(1) or is rebutted, a court is to consider "whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." *Id.* at § 707(b)(3).

The purpose of the means test, as enacted in the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005, is to "ensure that debtors who can pay creditors do pay them." *Ransom v. FIA Card Services, N..A.*, 562 U.S. 61, 64, 131 S.Ct. 716 (2011); *see also In re Tennyson*, 611 F.3d 873, 879 (11th Cir. 2010) (explaining that "[t]he heart of [BAPCPA's] consumer bankruptcy reforms . . . is intended to ensure that debtors repay creditors the maximum they can afford"). Section 707(b)(2) provides that a presumption of abuse arises if a debtor's current monthly income, less certain allowed deductions and multiplied by sixty is "not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,700, whichever is greater; or (II) $12,850." 11 U.S.C. § 707(b)(2)(A)(i).

To facilitate the means test calculation set forth in § 707(b)(2), an above-median chapter 7 debtor is required to complete Official Form 122A-2 with his or her petition for relief. Specifically, the form first requires a debtor to calculate his or her "current monthly income," as defined in § 101(10A). A debtor is then directed to take deductions in accordance with the National and Local Standards (the "Standards") promulgated by the Internal Revenue Service ("IRS") and for certain actual expenses, payments on priority unsecured claims, and payments for secured debts. 11 U.S.C.§707(b)(2)(A)(ii)(I)-(V). Importantly, the amount of these deductions varies based on a debtor's household size. After claiming all appropriate deductions, a debtor then subtracts the total figure from his or her current monthly income, which results in the debtors "monthly disposable income." In accordance with § 707(b)(2)(A)(I), a debtor finally multiplies that figure by sixty. If that amount is greater than "twenty-five percent of the debtor's nonpriority unsecured claims, or $7,475, whichever is greater; or $12,475," then a presumption of abuse arises. Upon a finding of a presumption of abuse, a court may dismiss the case or convert the case with the debtor's consent, absent a showing of special circumstances to rebut the presumption.

5

**A. Household Size**

Here, the Bankruptcy Administrator objects to three components of Ms. Hector's means test calculation, the first being her household size of one. The term "household" is not defined the Bankruptcy Code. As a result, courts have fashioned various approaches to define the term for purposes of means testing. *See In re Harris-Townes*, No. 15-06492-5-JNC, 2016 WL 1599829, *3 (Bankr. E.D.N.C. Apr. 18, 2016) (summarizing the "three different approaches to arrive at a 'household size'"). The United States Court of Appeals for the Fourth Circuit adopted the "economic unit" approach as being "consistent with . . . the [Bankruptcy] Code as a whole." *Johnson v. Zimmer*, 686 F.3d 224, 237 (4th Cir. 2012). The economic unit approach requires a fact-intensive analysis by the court in considering the "financial interdependence of individuals to determine whether someone is an economic part of a debtor's household . . . ." *Id.* The economic unit approach "recognizes that a debtor's 'household' may include non-family members and individuals who could not be claimed as dependents on the debtor's federal income tax return, but who nonetheless directly impact the debtor's financial situation." *Id.* Household size is accordingly determined on a case-by-case basis. *In re Morrison*, 443 B.R. 378 (Bankr. M.D.N.C. 2011).

The *Morrison* case is instructive, as it presented a similar factual situation. In that case, the chapter 13 debtor resided with her boyfriend in a condominium owned only by him. In exchange for rent, the debtor paid for all other household expenses, including groceries and utilities, and the two regularly commingled funds. In determining that the debtor and her boyfriend constituted a two-person household, the *Morrison* court considered seven specific factors, being:

> 1) the degree of financial support provided to the individual by the debtor; 2) the degree of financial support provided to the debtor by the individual; 3) the extent to which the individual and the debtor share income and expenses; 4) the extent to which there is

6

> joint ownership of property; 5) the extent to which there are joint liabilities; 6) the extent to which assets owned by the debtor or the individual are shared, regardless of title; and 7) any other type of financial intermingling or interdependency between the debtor and the individual.

*Morrison*, 443 B.R. at 388. No single factor is dispositive. *Id.* In this case, Ms. Hector does not financially support her partner in any manner, aside from her relatively minimal in-kind contributions to the household. Her partner does not directly support her financially, except for providing an indirect benefit in the form of a rent-free residence. Ms. Hector and her partner do not share income or expenses, do not jointly own property, do not have joint liabilities, and do not intermingle their finances in any way. All in all, Ms. Hector and her partner's living arrangement is akin to a roommate situation, wherein two one-person households merely share a roof and do not exist as an economic unit. Accordingly, Ms. Hector's household size of one is appropriate.

## B. Current Monthly Income

The court will next consider whether Ms. Hector must include all or part of her partner's income in calculating her current monthly income. As a starting point in completing the means test, a debtor is required to first list his or her "current monthly income," as defined in § 101(10A) as "the average monthly income from all sources that the debtor receives . . . during the 6-month period ending on – (i) the last day of the calendar monthly immediately preceding the date of the commencement of the case . . . ." *Id.* Importantly, current monthly income includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor . . . ." § 101(10A)(B).

In order to determine whether inclusion of Ms. Hector's partner's income is required, the court will begin with the relevant statutory provision, as "the starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

7

"It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Id.* (citations omitted). A plain reading of § 101(10A) does not require the court to impute in-kind rent, utilities, and other indirect support as income to Ms. Hector. The statute requires a debtor to include "any amount paid . . . on a regular basis for the *household expenses* of the debtor." Here, Ms. Hector's partner merely pays for his own individual household's expenses, including his mortgage and utilities, and Ms. Hector enjoys the benefits of those payments. Furthermore, the statute provides "any amount *paid* . . . on a regular basis," which suggests inclusion of monetary contributions. Ms. Hector's partner does not directly pay her any funds on a monthly basis. In addition, Ms. Hector's partner is not a non-filing spouse, and she is not entitled to employ the marital adjustment in completing her means test. Accordingly, Ms. Hector does not need to include her partner's income in her current monthly income calculation.

## C. Applicability of Claimed Deductions

The remaining issue is whether the "housing and utilities - mortgage or rent expenses" and the "housing and utilities - insurance and operating expenses" deductions are applicable to Ms. Hector, such that she may claim them in completing her means test calculation. In completing the means test, a debtor is instructed to deduct the "applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for categories specified as Other Necessary Expenses issued by the [IRS] for the area in which the debtor resides . . . ." 11 U.S.C. § 707(b)(2)(A)(ii).

In *Ransom*, the Supreme Court of the United States emphasized that "a debtor may claim not all, but *only 'applicable'* expense amounts" in completing the means test. *Ransom*, 562 U.S. at 62

8

(emphasis added). The Court further expounded on the term "applicable" and explained it to practically mean "appropriate, relevant, suitable, or fit" in light of a debtor's individual circumstances. *Id.* at 69. The Court reasoned that "[b]ecause Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by *actually incurring* an expense in the relevant category." *Id.* at 70 (emphasis added). While *Ransom* involved a chapter 13 debtor, courts have consistently applied its holding and rationale to chapter 7 cases. *See, e.g.*, *In re Wilson,* 454 B.R. 155 (Bankr. D. Colo. 2011) (explaining that "the Supreme Court's analysis [in *Ransom*] was focused on the terms of § 707(b)(2)(A)(ii) . . . which is obviously applicable to Chapter 7 cases . . . .").

Additionally, the United States Court of Appeals for the Fourth Circuit explained that once "an expense is incurred . . . [a] debtor is entitled to take the full amount of the National and Local Standards if they incur an expense in that category." *Lynch v. Jackson*, 853 F.3d 116, 119 (4th Cir. 2017). Accordingly, the court must first determine whether a debtor actually incurs an expense in each category to determine whether a deduction is applicable pursuant to *Ransom*. If so, a debtor is entitled to claim the full National or Local IRS Standard amount, as explained in *Jackson*. For cases filed between May 1, 2016 and October 31, 2016, the IRS subdivides the Local Standard for housing and utilities into two categories: "non-mortgage" and "mortgage/rent." When Ms. Hector filed the petition in October of 2016, the relevant Local Standard deduction amount for non-mortgage expenses was $435, and the Local Standard deduction amount for mortgage/rent expenses was $1,061.

Ms. Hector claimed a deduction for "housing and utilities - insurance and operating expenses" in the amount of $435, representing household expenses, such as utilities, not associated

9

with a rent or mortgage payment.  The IRS Local Standard for utilities includes expenses for "internet services, telephone, and cell phone."  Internal Revenue Manual 5.15.1.9 (2014).  At the hearing, Ms. Hector testified that she pays a monthly Verizon bill.  While this is presumably for cellular phone service rather than any household utility expense, no additional information regarding this expenditure was produced and no additional testimony was elicited.  As a result, by incurring a utility expense, the deduction is applicable to Ms. Hector under *Ransom*.  Pursuant to *Jackson*, Ms. Hector's monthly expenditure on a cell phone entitles her to claim a full deduction for "housing and utilities - insurance and operating expenses" in the total amount of  $435.

In addition, Ms. Hector claimed a deduction for "housing and utilities - mortgage or rent expenses" in the amount of $1,061 pursuant to the IRS Local Standard.  However, as was explained through testimony at the hearing, Ms. Hector incurs no formal monthly rent or mortgage expense.  She does not remit any funds directly to her partner in exchange for the right to reside at his property and is not a party to a lease agreement of any sort.  Her contributions of groceries, cleaning supplies, and in-kind services do not amount to a rental or mortgage expense.  Nothing in the Bankruptcy Code or IRS Local Standards directs the court to equate the regular purchase of those items with rent in order to allow Ms. Hector to properly claim a housing deduction.  Simply put, the "housing and utilities - mortgage or rent expenses" deduction, as defined by the IRS Local Standard, is inapplicable to Ms. Hector.

Furthermore, Ms. Hector also claims a deduction in the amount of $570 for "food, clothing, and other items," which presumably represents expenditures for the same groceries and cleaning supplies purchased for the household that she seeks to liken to an in-kind rent payment.  The court declines to permit Ms. Hector to effectively count a single set of monthly expenses related to

groceries and cleaning supplies to claim deductions in two categories, as this would artificially inflate her allowed expenses and permit her to "pass" the means test by concealing available disposable income. Such a result would directly contravene the policy rationale underlying the means test. Accordingly, Ms. Hector's deduction for mortgage or rent expenses is disallowed. With the substitution of $0.00 in place of the improperly claimed rent/mortgage deduction but inclusion of the other applicable deductions taken, Ms. Hector has approximately $1,195.78 in available monthly disposable income. This amount, when multiplied by sixty, exceeds twenty-five percent of Ms. Hector's nonpriority unsecured claims and also exceeds $12,475. A presumption of abuse arises as a result pursuant to § 707(b)(1). No evidence of any special circumstances was presented at the hearing to rebut the presumption pursuant to § 707(b)(2)(B)(I), and dismissal under § 707(b)(1) is therefore warranted.

**D. Dismissal Pursuant to 11 U.S.C. § 707(b)(3)**

Finally, the Bankruptcy Administrator contends that Ms. Hector's case should be dismissed pursuant to § 707(b)(3). Section 707(b)(3) applies when no presumption of abuse arises based on a debtor's means test calculation, but a court nonetheless finds bad faith or abuse based upon the totality of the debtor's circumstances. 11 U.S.C. § 707(b)(3)(A)-(B). In this case, because the mortgage or rent expense deduction is disallowed, Ms. Hector does not pass the means test. Accordingly, the court need not fully consider § 707(b)(3) but notes that based upon her testimony at the hearing, Ms. Hector appears to be an honest debtor seeking a fresh start. No evidence was presented to suggest that Ms. Hector's petition was filed in bad faith. Her present financial circumstances are common to many debtors, and the court declines to dismiss the case pursuant to § 707(b)(3).

11

## CONCLUSION

Based on the foregoing, Ms. Hector's deduction for "housing and utilities - mortgage or rent expenses" is disallowed. As a result, a presumption of abuse arises, and the Motion to Dismiss is GRANTED. The debtor shall have fourteen (14) days from the entry of this order to convert the case to one under chapter 13. Should the Debtor fail to convert the case within fourteen days, the case will be DISMISSED pursuant to § 707(b)(1).